UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DEVON DENZEL LETOURNEAU, | : | |
| (aka SHABAZZ BE ALLAH) | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 22-285JJM |
| | : | |
| RHODE ISLAND DEPARTMENT OF | : | |
| CORRECTIONS, et al., | : | |
|     Defendants. | : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

    Plaintiff Devon Letourneau, a/k/a Shabazz Be Allah, is a prisoner in the custody of the Rhode Island Department of Corrections ("RIDOC") and a practitioner of the "culture and way of life" called the Nation of Gods and Earths ("NOGE"), also referred to as "Five Percenters."[1] Following litigation initiated in 2014 by Plaintiff, RIDOC recognized NOGE as a "religion," as that term is used in the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1. Letourneau v. Aul, 14-cv-421JJM, consolidated with Vangel v. Aul, 15-cv-43JJM, (collectively referred to as "14-cv-421JJM"). In 2017, through a federal court-annexed mediation of these consolidated cases, Plaintiff signed a Term Sheet that settled them with RIDOC's acknowledgment that NOGE is to be recognized as a religion[2] and its adherents are to be treated similarly to adherents of other religions, with specified rights of practice: to practice NOGE "Honor Days," including the option to request

---

[1] For a description of NOGE as practiced at RIDOC institutions, see Vangel v. Aul, C.A. No. 15-43L, 2015 WL 5714850, at *1 (D.R.I. June 19, 2015), adopted, 2015 WL 5714855 (D.R.I. Sept. 29, 2015).

[2] To resolve Plaintiff's complaint that the term "religion" is doctrinally inapt under NOGE's belief system, the Court clarified that NOGE is to be treated as a religion as that term is used in applicable law, but that it "has the indicia of a system of religious belief or practice but is not a religion." Letourneau, 14-cv-421JJM, Text Order of June 2, 2017; see also id. at ECF No. 88 at 10-11.

kosher food on those days; to eat Halal food to the same extent that it is offered to Muslims; to wear a kufi; and to receive NOGE publications.  Letourneau, 14-cv-421-JJM, ECF No. 80-1.  As clarified in an implementation plan filed at the direction of the Court, RIDOC advised that it had and would continue for two months to communicate about implementation; informed staff of the settlement; committed to posting notices of Honor Days; but clarified that it had no duty to identify volunteers for NOGE services or to order NOGE publications and that NOGE publications remained subject to RIDOC's mail policy.  Id., ECF No. 87.  All settlement terms were made subject to RIDOC's rules and regulations.  Id., ECF Nos. 80-1; 87.

In 2022, Plaintiff filed this new *pro se*[3] case seeking money damages and injunctive/declaratory relief pursuant to 42 U.S.C. § 1983 (invoking the First [Free Exercise], Fourth, Eighth and Fourteenth [Equal Protection] Amendments) and RLUIPA.  As Defendants, he has joined RIDOC; its former Director, Patricia Coyne-Fague; Richard Hahn, a deputy warden; and six members of the correctional staff (Lt. David Larangeira, Lt. Daniel Carnivale, Capt. Walter Duffy and Correctional Officers Vance Tyree, James Thifault and Jose Dritt).  ECF Nos. 1 & 5.[4]  All Defendants are sued in their individual and official capacities.  Id.  Plaintiff claims that RIDOC failed to implement the mediated settlement agreement in good faith and, instead, has engaged in a "systemic plot to practice Theological Discrimination" to deter inmates from embracing NOGE and to deter access to the Five Percenter newspaper and other religious

---

[3] Plaintiff's filings have been interpreted with the leniency required for any *pro se* litigant.  De Barros v. From You Flowers, LLC, 566 F. Supp. 3d 149, 152 (D.R.I. 2021).

[4] There is some confusion regarding whether Lt. Carnivale and Correctional Officers Thifault and Dritt are properly joined as named Defendants because Plaintiff purported to add them in his Supplemental Addendum (ECF No. 5), which he subsequently withdrew.  ECF No. 16.  Mindful of his *pro se* status, and of the reality that all three have either answered or moved to dismiss, I have treated them as joined even though they are not listed as defendants in the complaint.

effects. ECF No. 1 at 2, 19. He also alleges that certain RIDOC staffers continue to believe that NOGE/Five Percenter is "part-religion/part-gang." Id. at 19.

Now pending before the Court is a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), brought by Defendants RIDOC, Coyne-Fague, Hahn, Tyree, Dritt, Carnavale, Duffy (official capacity only), Larangeira (official capacity only), and Thifault (official capacity only). ECF No. 13. The motion challenges the viability of all claims arising under the Fourth Amendment; all claims arising under RLUIPA; all claims against Defendants Coyne-Fague, Hahn and Tyree in their official and individual capacities; and all claims for money damages against RIDOC and all official capacity Defendants.[5] Defendants RIDOC, Larangeira, Duffy and Thifault (as to the latter three in their individual capacities only)[6] do not challenge Plaintiff's claims based on the First Amendment's Free Exercise Clause and the Fourteenth Amendment's Equal Protection Clause. They have answered those claims. ECF No. 14.

The motion to dismiss has been referred to me for report and recommendation.

**I.      Background**

---

[5] Plaintiff's Supplemental Addendum purported to add a claim of retaliation. ECF No. 5 ¶¶ 1-3, 30-31. Plaintiff subsequently withdrew the Supplemental Addendum thereby removing the retaliation claim from the case. ECF No. 16, granted by Text Order Apr. 7, 2023. Additionally, Plaintiff has advised that he is "hereby striking" his claims based on the Eighth Amendment. ECF No. 18 at 5. Accordingly, my recommendation includes the dismissal of all Eighth Amendment claims.

[6] The motion to dismiss does not specifically challenge the official capacity claims against Defendants Larangeira, Duffy and Thifault for injunctive/declaratory relief based on the First Amendment's Free Exercise Clause and the Fourteenth Amendment's Equal Protection Clause. With RIDOC as a named defendant, these claims are surplusage that the Court may strike *sua sponte*. Snyder v. Blagojevich, No. 04 C 1291, 2004 WL 524882, at *1 (N.D. Ill. Feb. 24, 2004) (court *sua sponte* strikes as surplusage official-capacity claims against individuals that duplicate claims against governmental entity that is also named) (citing Kentucky v. Graham, 473 U.S. 159, 165-66 (1985)); see, e.g., Silva v. Rhode Island, C.A. No. 19-568JJM, 2020 WL 5258639, at *3 (D.R.I. Sept. 1, 2020) (claim against RIDOC official in official capacity dismissed as surplusage in that State is already named as a defendant), adopted by Text Order (D.R.I. Sept. 16, 2020); Mallory v. City of Riverside, Ohio, No. 3:13-cv-220, 2013 WL 6158407, at *4 (S.D. Ohio Nov. 25, 2013) (with city named as defendant, allegations against city officials in their official capacities dismissed as surplusage). Based on this principle, I *sua sponte* recommend that they should be dismissed. Further, mindful of my recommendation, *infra*, that Plaintiff's RLUIPA claim for injunctive/declaratory relief should survive the motion to dismiss, to the extent that the RLUIPA claim purports to run against Defendants Larangeira, Duffy and Thifault in their official capacities, I make the same recommendation for the same reason.

3

Plaintiff's complaint alleges that RIDOC and its officials have violated his right to freely exercise his religion guaranteed by the Free Exercise Clause of the First Amendment, have imposed a substantial burden on his religious exercise, which is barred by RLUIPA unless justified by a compelling government interest, and have engaged in religious discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment by failing to treat NOGE adherents similarly to how adherents of other recognized religions are treated, instead reinstituting "gang-prevention methods" to target NOGE adherents.  ECF No. 1 at 2-3.  Plaintiff also claims that his Fourth Amendment rights were transgressed by "mail activities" and when his cell was searched.  ECF No. 1 ¶¶ 19-26, 66.  Though nothing was removed, Plaintiff claims a correctional officer explained the search: "[T]his is why you shouldn't be a Five Percenter."  Id. ¶¶ 23-25.

For specific allegations, Plaintiff claims:

RIDOC has not been posting notices announcing NOGE Honor Days analogous to the notices posted for other religions, id. ¶¶ 5, 63.

RIDOC has frequently failed to offer him kosher food on Honor Days, id. ¶ 63;

RIDOC has failed to include on its commissary list NOGE's preferred style of kufi, id. ¶ 10;

RIDOC failed to initiate contact with NOGE spiritual leader Born King Allah, id. ¶¶ 8-9;

An unidentified book that Plaintiff ordered was submitted for review to the Publication Review Committee, id. ¶ 53;

RIDOC removed and discarded the envelope in which certain NOGE material was mailed, id. ¶¶ 55, 57; and

RIDOC failed to respond to Plaintiff's communications and grievances, id. ¶¶ 12-16, 63.

Regarding the resumption of treatment of NOGE as a gang, Plaintiff alleges that another inmate told him that his "Universal Flag of Islam" was removed by Defendant Thifault from his cell because it was "gang-related." Id. ¶¶ 17-18. Regarding himself, Plaintiff notes the comment referenced above, was made by a correctional officer on the day of the search of his cell. On the day following the search, he describes a conversation about it with Defendant Larangeira, who told him that his personal experience from the 1990s was "negative" with "Five Percenters," which Defendant Larangeira stated he had then understood to be a gang; however, Defendant Larangeira also told Plaintiff that he was aware of the settlement, that recently "NOGE hasn't been a problem," and that he would not confiscate Plaintiff's Five Percenter newspaper. Id. ¶¶ 19-28. The pleading alleges that Plaintiff discussed these concerns with an "investigator" and was assured that "NOGE practices are recognized and afforded the same protection as given all religions the RIDOC accommodates." Id. ¶ 34.

Plaintiff also makes a series of allegations about mail irregularities. First, he claimed delay in his receipt of his first issue of the Five Percenter newspaper and that, when he got it, the envelope had been confiscated. Id. ¶ 37-38. In response to his complaint, Defendant Hahn told Plaintiff that RIDOC policy does not require that the envelope in which mail arrives be provided to an inmate. Id. ¶38. Plaintiff concedes in his opposition memorandum that, at approximately the same time that the State received notice of service of this complaint, he began receiving his Five Percenter newspaper with the envelope intact. ECF No. 18 at 4. Second, Plaintiff alleges that, with no envelope to write on, an issue of the NOGE newspaper directed to another inmate (that was shared with Plaintiff) was defaced by a correctional officer (Tyree) who wrote the name and cell number of the recipient (not Plaintiff) across photographs of ten Black murder victims of the massacre in Buffalo, New York. Id. ¶¶ 42-45. Plaintiff also claims that this action

5

(labeling the newspaper with the name of the recipient) raised the concern that sharing the newspaper with other NOGE adherents might breach the rule barring inmates from possessing the property of other inmates. Id. ¶ 56. Third, Plaintiff alleges that his order of a NOGE necklace was delayed. Id. ¶ 46.

Neither the body of the complaint nor the Exhibits makes any reference to Defendants Carnivale and Dritt.

## II.     Law and Analysis

Invoking Fed. R. Civ. P. 12(b)(6), Defendants' motion to dismiss asks the Court to pare the complaint down to the two claims (violations of the First Amendment's Free Exercise Clause and the Fourteenth Amendment's Equal Protection Clause) and the four Defendants (RIDOC for injunctive/declaratory relief only and the three RIDOC officials in their individual capacities for § 1983 money damages and injunctive/declaratory relief) that they concede are legally permissible and plausible in that they are sufficiently supported by factual, not conclusory, allegations as required by Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009).[7]

First, Defendants argue that Plaintiff's § 1983 money damage claims against RIDOC and all Defendants in their official capacities must be dismissed. Defendants rely on the well-settled principle grounded in the Eleventh Amendment and established by the Supreme Court in Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989), that neither a State nor its officials acting in their official capacities are "persons" under § 1983. Id. at 71; see also Johnson v. Rodriguez,

---

[7] Embedded in his opposition memorandum, Plaintiff included an argument that could be interpreted as a motion to strike Defendants' affirmative defenses, particularly the one based on the applicable statute of limitations. ECF No. 18 at 1-2. Defendants did not respond to this argument as if it were a motion to strike stated in a stand-alone motion. This is consistent with DRI LR Cv 7(a)(2), which requires that such a prayer for relief must be clearly stated in a stand-alone motion. Thus, I have considered Plaintiff's challenges to affirmative defenses only to the extent that they are responsive to the pending motion to dismiss.

943 F.2d 104, 108 (1st Cir. 1991).  I agree.  All § 1983 money damage claims against RIDOC and all Defendants in their official capacities should be dismissed, leaving only claims for injunctive/declaratory relief.  The latter claims should be further reduced by my *sua sponte* recommendation that the Court should dismiss official capacity claims against all Defendants, including Larangeira, Duffy, and Thifault, as surplusage because Plaintiff has asserted his claims for injunctive/declaratory relief against RIDOC.[8]

      Second, Defendants challenge the plausibility of Plaintiff's assertion of a claim based on the Fourth Amendment.  This claim is focused on the search of Plaintiff's cell (which resulted in no seizures) and "mail activities" apparently based on the discarding of the envelope for the NOGE newspaper.  Arguing that it is Plaintiff's burden plausibly to plead that a search or seizure transgressed an area where Plaintiff had a reasonable expectation of privacy, both subjective and objective, United States v. Morel, 922 F.3d 1, 9-10 (1st Cir. 2019), Defendants rely on the settled proposition that a prisoner does not have a legitimate expectation of privacy in his cell or property entitling him to the protection of the Fourth Amendment against unreasonable searches and seizures.  See Hudson v. Palmer, 468 U.S. 517, 526-36 (1984); Nunes v. Mass. Dep't Corr., 766 F.3d 136, 143 (1st Cir. 2014).  Nor does the discarding of an envelope that was opened in connection with RIDOC's legally permissible security check of Plaintiff's mail plausibly amount to an unconstitutional seizure in transgression of the Fourth Amendment.  See Lindell v. Doe, No. 01-C-209-C, 2001 WL 34382048, at *4 (W.D. Wis. May 3, 2001) (prisoner's Fourth Amendment claim based on alleged seizure of magazine from prison mail dismissed as "legally frivolous"), aff'd in relevant part, 58 F. App'x 638 (7th Cir. 2003).  Finding that this argument is well founded, I recommend that all Fourth Amendment claims should be dismissed.

---

[8] See n.6 *supra*.

Third, Defendants contend that Plaintiff's RLUIPA pleading is insufficient to plausibly allege that Plaintiff's religious exercise was made "subject to a substantial burden." LeBaron v. Spencer, 527 F. App'x 25, 28 (1st Cir. 2013) (per curiam) (internal quotation marks omitted). The focus of this argument is on the substantiality of the burden as supported by Plaintiff's facts, which the law requires must be serious enough to "put[] substantial pressure on an adherent to modify his behavior and violate his beliefs." Velasquez v. Martin, C.A. No. 21-352 WES, 2023 WL 2302066, at *5 (D.R.I. Mar. 1, 2023) (internal quotation marks omitted). In Velasquez, the plaintiff supported his RLUIPA claim with only one incident of alleged harassment during which he attended a meeting at which negative comments were made about his helping another inmate to convert to Islam. Id. at *1-4. The Court found this to be insufficient to permit the inference that prison policy substantially burdened religious practice or that any defendant took actions that burdened his religious practice or pressured the plaintiff to modify his behavior and violate his beliefs. Id. at *5.

In this case, Defendants are right that Plaintiff's RLUIPA pleading of substantial burden on religious exercise is tepid. Nevertheless, Plaintiff's factual array includes a comment by a correctional officer that his cell had been searched because of his adherence to the tenets of NOGE, which may be seen as pressure to deter Plaintiff from sustaining his open religious practice. Read together with the claims that RIDOC failed to post notices announcing NOGE Honor Days and frequently failed to offer Plaintiff kosher food, I find that the RLUIPA claim has enough heft to survive this Fed. R. Civ. P. 12(b)(6) motion to dismiss, although it may not survive summary judgment. See LaPlante v. Mass. Dep't of Corr., 89 F. Supp. 3d 235, 242, 248, 253 (D. Mass. 2015) (because incidental effects on religion not enough for RLUIPA "substantial burden[]," RLUIPA claim fails at summary judgment).

However, while I recommend that the RLUIPA claim should survive the motion to dismiss, the law is clear that the State's sovereign immunity precludes a RLUIPA claim for money damages against RIDOC and the other Defendants in their official capacities. Gray v. Hanks, No. 20-cv-152-PB, 2021 WL 2593613, at *4 (D.N.H. June 8, 2021), adopted sub nom. Gray v. NH Dep't of Corr., 2021 WL 2592171 (D.N.H. June 23, 2021); Musterd v. Rhode Island Dep't of Health, C.A. No. 17-124JJM, 2018 WL 1684345, at *3 (D.R.I. Mar. 19, 2018), adopted, 2018 WL 1700849 (D.R.I. Apr. 5, 2018). In addition, as Defendants contend, Plaintiff's RLUIPA claim for money damages against the individual Defendants in their individual capacities should be dismissed because money damages are not available under RLUIPA against state officials sued in their individual capacities. Martinko v. New Hampshire Dep't of Corr. Comm'r, Case No. 22-cv-238-LM, 2023 WL 3325086, at *5 (D.N.H. Apr. 3, 2023) ("well-reasoned opinions of every federal appellate court to address the issue . . . conclud[e] that RLUIPA does not authorize claims for damages against prison officials in their individual capacities"), adopted sub nom. Martinko v. NH Dep't of Corr., 2023 WL 3322982 (D.N.H. May 9, 2023). Therefore, I recommend that the motion to dismiss the RLUIPA claim be denied to the limited extent that the RLUIPA claim for injunctive/declaratory relief against only RIDOC and the surviving individual capacity Defendants (Larangeira, Duffy and Thibault) should proceed.

Finally, Defendants challenge the factual sufficiency of Plaintiff's § 1983/RLUIPA claims against Defendants Coyne-Fague, Hahn and Tyree.[9] For the constitutional claims of Free Exercise and Equal Protection, Defendants appropriately rely on the so-called "Turner test,"

---

[9] Defendants have omitted Defendants Carnivale and Dritt from this part of their motion to dismiss, likely due to the confusion created by Plaintiff's filing and subsequent withdrawal of the Supplemental Amendment. See n.4 supra. Having scoured Plaintiff's pleading (both the body and the Exhibits), I find that there are no claims against – indeed, there is no reference to – either of them in any part of it. Therefore, I sua sponte recommend that they also be dismissed.

which applies both to the determination of whether a "regulation or practice encroaches upon prisoner's right to free exercise of their religion," Evora v. Wall, No. A06-94S, 2007 WL 779586, at *4 (D.R.I. Mar. 13, 2007) (citing Turner v. Safley, 482 U.S. 78, 89 (1987)), and to the determination whether prison officials have violated a prisoner's right to equal protection in matters of religion, Parkell v. Senato, 704 F. App'x 122, 125 n.6 (3d Cir. 2017) (per curiam). The Turner test examines (1) whether the regulation or practice in question furthers a legitimate governmental interest; (2) whether there are alternative means of exercising First Amendment rights that remain open to prison inmates; (3) whether accommodation of the right will disrupt the prison environment, and (4) whether an alternative exists which would fully accommodate the prisoner's rights at a *de minimis* cost to valid penological interests. Evora, 2007 WL 779586, at *4; see generally Collagan v. Aroostook County Jail, 1:22-cv-00362 JAW, 2023 WL 2423268, at *4 (D. Me. Mar. 9, 2023), adopted, 2023 WL 2743638 (D. Me. Mar. 31, 2023). Turner holds that a prison "regulation is valid if it is reasonably related to legitimate penological interests." Spratt v. R.I. Dep't of Corr., 482 F.3d 33, 42 (1st Cir. 2007) (internal quotation marks omitted). While RLUIPA imposes a higher standard on prison administrators in that they may take actions that impose a substantial burden on religion only to achieve a "compelling interest by the least restrictive means," id. at 41 n.12 (internal quotation marks omitted), RLUIPA implicates only claims for injunctive/declaratory relief. For the reasons that follow, I find that Plaintiff's allegations as to these three Defendants fail to clear the Twombly/Iqbal hurdle; therefore, I recommend that all three be dismissed.

      As to Defendant Coyne-Fague, she is the former Director of RIDOC. The only mention of her in the substantive portion of the pleading is the conclusory allegation in ¶ 51 that she failed to implement the 2017 settlement, presumably before she left RIDOC. This allegation

fails to pass Twombly/Iqbal muster not only because it is conclusory, but also because it is contradicted by the cognizable facts of record in Plaintiff's 2014 case (14-cv-421JJM, ECF No. 87 (RIDOC's compliance with Court's instruction to file implementation plan)) and as alleged in the instant pleading (ECF No. 1 ¶¶ 6, 28, 32-34, 41, 46). The claim therefore is not plausible. And it were plausible, ¶ 51 is not sufficient to support claims based on religious discrimination or burden on religious practice. Further, Defendant Coyne-Fague no longer serves as the Director and is no longer the official able to respond to Plaintiff's claims for injunctive/declaratory relief under either § 1983 or RLUIPA. All claims against former Director Coyne-Fague should be dismissed.

As to Defendant Tyree, sued as a low-level correctional officer, ECF No. 1 at 4, Plaintiff makes the following factual allegations. First, in ¶¶ 52-53, he claims that Defendant Tyree, as the "mail officer," participated in an unspecified way in the decision to have a book (not alleged to be NOGE-related) that Plaintiff ordered be submitted for review; this fact, as pled, bears no relationship to religious discrimination or burden on religious practice. It certainly permits no inference of misconduct by Defendant Tyree. Second, in ¶¶ 43, 55-56, Plaintiff contends that it was Defendant Tyree who, on one occasion, wrote the addressee's name and cell number on the Five Percenter newspaper, defacing photographs, because the envelope was gone. Accepting that Plaintiff has standing to complain of this conduct because he read this newspaper even though it was not addressed to him and noting Plaintiff's concession that soon after the filing of the complaint the practice of removing the envelope ceased, I agree that this allegation of a one-time unfortunate action by a RIDOC functionary does not permit the inference of religious discrimination or burden on religious practice. Therefore, I find that it is simply not enough to hold Defendant Tyree in this case. All claims against him should be dismissed.

As to Defendant Hahn, named as a deputy warden, ECF No. 1 at 4, Plaintiff alleges that he:

- Denied Plaintiff's grievance at level I about delay in delivery of the Five Percenter newspaper and delivery with the envelope removed with the response that the newspaper had been delivered and that RIDOC policy does not require the delivery of envelopes, id. ¶ 38;

- "Pre-approv[ed]" Defendant Tyree's one-time action in "deface[ing]" the Five Percenter newspaper by writing the addressee's name and cell number on it, id. ¶¶ 43, 55-56;

- Told Plaintiff he was not aware of the whereabouts of Plaintiff's delayed NOGE-related mail, which was subsequently delivered, id. ¶¶ 45-47;

- As part of his duty to monitor mail for security purposes, made the determination that a book ordered by Plaintiff (not alleged to be NOGE-related) posed a substantial security risk, subject to Plaintiff's right to appeal this decision, id. ¶¶ 52-53 & Exs. N, Q.

None of these allegations permit the inference that these actions by Defendant Hahn were based on anti-NOGE animus or were related to burdening, deterring or discriminating against NOGE practice. Defendant Hahn should be dismissed from this case.

### III.  Conclusion

Except for the RLUIPA claim for injunctive/declaratory relief against RIDOC and the three surviving Defendants (Larangeira, Duffy and Thibault in their individual capacities), as to which I recommend that the motion to dismiss be denied, I recommend that Defendants' motion to dismiss (ECF No. 13) be granted. I further make the *sua sponte* recommendations (1) that the Court dismiss as surplusage the official capacity claims against all Defendants, including Larangeira, Duffy and Thifault, for injunctive/declaratory relief because RIDOC is joined as a Defendant; and (2) that the Court dismiss all individual capacity claims against Defendants Carnivale and Dritt because the complaint fails to state any claim against them. I further recommend that all Eighth Amendment claims be dismissed based on Plaintiff's representation

that he is striking any claims arising under the Eighth Amendment. To clarify the timing of the obligation of the remaining Defendants (RIDOC and Defendants Larangeira, Duffy and Thibault in their individual capacities) to supplement their answer or otherwise respond to the complaint with respect to Plaintiff's RLUIPA claim, I order that a supplemental responsive pleading shall be due fourteen days either following the expiration (without objection) of the period for objection to this report and recommendation or, if any party objects, following the District Court's determination and then only to the extent that supplementation is required.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
June 23, 2023